IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CITY OF PORTLAND, | Case No. 3:12-cv-00610-ST |
| Plaintiff, | |
| v. | ORDER ADOPTING IN PART AND REJECTING IN PART FINDINGS AND RECOMMENDATIONS |
| INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, | |
| Defendant. | |

James T. McDermott and Kevin S. Mapes, BALL JANIK LLP, 101 S.W. Main Street, Suite 1100, Portland, OR 97204-3219. Attorneys for Plaintiff.

Donald J. Verfurth and Sally Kim, GORDON REES LLP, 701 Fifth Avenue, Suite 2100, Seattle, WA 98104. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

United States Magistrate Judge Janice M. Stewart issued Findings and Recommendations in this case on March 6, 2013. Dkt. 34. Judge Stewart recommended that the Motion for

Summary Judgment by Defendant Insurance Company of the State of Pennsylvania ("ICSOP" or

"Defendant") (Dkt. 19) be granted, that the Cross-Motion for Partial Summary Judgment by

Plaintiff City of Portland ("the City" or "Plaintiff") (Dkt. 25) be denied, and that judgment be

entered for Defendant. The pending motions in this insurance coverage action concern the

interpretation of several undefined terms in ICSOP's insurance contract issued to the City.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject or modify, in

whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.

§ 636(b)(1). If a party files timely objections, "the court shall make a *de novo* determination of

those portions of the report or specified proposed findings or recommendations to which

objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of the findings and recommendations to which neither party has

objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140,

152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a

district judge to review a magistrate's report[.]"); *United States. v. Reyna-Tapia*, 328 F.3d 1114,

1121 (9th Cir. 2003) (*en banc*) (court must review *de novo* magistrate's findings and

recommendations if objection is made, "but not otherwise"). Although in the absence of

objections no review is required, the Act "does not preclude further review by the district judge[]

*sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. The Advisory

Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed,"

the Court review the findings and recommendations for "clear error on the face of the record."

Plaintiff timely filed objections to Judge Stewart's Findings and Recommendations

(Dkt. 43), to which Defendant responded (Dkt. 47). Plaintiff objects to the portions of Judge

Stewart's recommendations that: (a) Plaintiff's interpretations of the undefined contractual terms

"defense costs" and "incurred" were not reasonable; (b) "defense costs" did not include Plaintiff's costs for the in-house attorneys serving as trial counsel of record billed to the City by the Office of the City Attorney; and (c) summary judgment be granted for Defendant on Plaintiff's First and Second claims. For the reasons discussed below, the Court ADOPTS IN PART AND REJECTS IN PART Judge Stewart's Findings and Recommendations.

## UNDISPUTED FACTS

The Court ADOPTS Judge Stewart's statement of the undisputed facts.

## DISCUSSION

### A.  Standards

#### 1.  Summary Judgment Standard

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . . " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

### 2.  Oregon Insurance Contract Interpretation

In Oregon, interpretation of an insurance contract is a question of law. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.*, 836 P.2d 703, 706 (Or. 1992). "The primary and governing rule of construction is to ascertain the intention of the parties." *Id.* In order to determine the intention of the parties, the court looks to the terms and conditions of the insurance policy itself. Or. Rev. Stat. § 742.016. The court's role is "not to insert what has been omitted, or to omit what has been inserted," but rather "simply to ascertain and declare what is, in terms or in substance, contained therein." Or. Rev. Stat. § 42.230.

If the insurance contract defines the term or phrase at issue, the court applies that definition. *Holloway v. Republic Indem. Co. of Am.*, 147 P.3d 329, 333 (Or. 2006). If, on the other hand, the policy does not define the term or phrase, the court turns to "aids of interpretation to discern the parties' intended meaning." *Id.* The Oregon Supreme Court provides a three-part interpretive framework for determining the parties' intended meaning: first, the court considers "whether the phrase in question has a plain meaning, *i.e.*, whether it 'is susceptible to only one plausible interpretation.'" *Id.* If there is only one plausible interpretation, the court applies that interpretation with no further analysis. But if there is more than one possible meaning, the court proceeds to the second interpretive step, in which the court examines "the phrase in light of the particular context in which that phrase is used in the policy and the broader context of the policy as a whole." *Id.* at 334 (citation and quotation marks omitted). Finally, if any ambiguity remains, the court at step three resolves "any reasonable doubt as to the intended meaning of such a term" against the insurance company. *Id.* at 334.

**B.  Exclusion of Extrinsic Evidence**

The Court has reviewed for clear error Section II ("Exclusion of Extrinsic Evidence") of Judge Stewart's Findings and Recommendations to which no party has objected. The Court finds no clear error and ADOPTS that section.

**C.  Insurance Contract Interpretation**

Both the City and ICSOP moved for summary judgment on the City's breach of contract claims (claim one and claim two). Additionally, ICSOP moved for summary judgment against the City's unjust enrichment claim (claim three). Central to the resolution of these motions is the issue of whether the in-house defense costs incurred by the City are considered "defense costs" under the terms of the insurance contract at issue. As discussed in Judge Stewart's statement of undisputed facts, with regard to the "Chasse Claim"[1] (claim one), the parties disagree about whether the definitions of "ultimate net loss" and "retained limit" include the City's in-house defense costs. With regard to the "EPL Claims"[2] (claim two), the parties disagree about whether in-house defense costs were "incurred" and whether in-house defense costs are "salaries" and thus excluded from reimbursement under the insurance contract.

**1.  Chasse Claims**

**a.  Defense Costs**

"Defense costs" is not a defined term in the insurance contract, so the Court applies the *Holloway* three-step analysis to determine its intended meaning. First, the term "defense costs" itself does not have a plain or unambiguous meaning. It is plausible that the term "defense costs"

---

[1] The "Chasse Claim," as defined in Judge Stewart's Statement of Undisputed Facts, arose from a lawsuit against the City relating to the death of James P. Chasse on September 17, 2006, while he was in police custody.

[2] The "EPL Claims," as defined in Judge Stewart's Statement of Undisputed Facts, arose after the City successfully defended several employment practice liability lawsuits.

would include the costs or charges of the in-house attorneys assigned as trial counsel of record in the underlying litigation (and the paralegals who assisted them). It is also plausible, however, that the term "defense costs" would include only outside attorneys (and paralegals) and not include any in-house attorneys, regardless of the role played by the in-house attorneys. Because there are at least two plausible interpretations of "defense costs," the Court proceeds to the second interpretive step and examines the context in which the term is used in the contract.

Section I.B.1 of the insurance policy reads:

> **We** shall have the right and duty to defend, investigate and settle any **claim** or **suit** seeking damages covered by the terms and conditions of this Policy when the applicable limits of insurance of the **underlying insurance** listed in the Schedule of **Underlying Insurance**, the limits of insurance of any other **underlying insurance** providing coverage to **you**, or **your** self insured retention of the **retained limit** have been exhausted by payment to a third party of judgments, settlements, or defense costs, or by payment of **covered first party automobile expenses**.

Dkt. 21-4 at 2 (emphasis in original). ICSOP argues that, based on Section I.B.1, the term "defense costs" only encompasses outside, or third-party, defense costs. ICSOP is wrong, but not for the reason given by the City of Portland.

The City of Portland argues that the qualifying phrase "to a third party," as used in the final three lines of Section I.B.1, only modifies the word "judgments" and does not also apply to the words "settlement" or "defense costs." As Judge Stewart correctly concluded in her Findings and Recommendations, the City's argument would render the sentence grammatically incorrect.

Under the City's interpretation, Section I.B.1 would read, in essence:

> We shall have the right and duty to defend . . . when the applicable limits . . . or your self insured retention of the retained limit have been exhausted by payment: (A) to a third party of judgments; (B) settlements [*sic*]; or (C) defense costs [*sic*].

PAGE 6 – OPINION AND ORDER

The problem with the City's interpretation arises from the fact that between the words "to a third party" and "judgments" is the word "of." If one restricts the qualifying clause "to a third party" only to "judgments," then the preposition "of" is no longer available to precede "settlements" or "defense costs," and the sentence would effectively, but ungrammatically, read "payment settlements" and "payment defense costs." The only way to avoid this result is to read "to a third party" as restricting the payment "of judgments, settlements, and defense costs" in the insurance contract as it is written. The sentence, therefore, must be interpreted as equivalent to "payment to a third party of judgments, payment to a third party of settlements, and payment to a third party of defense costs." Thus, the City's interpretation of Section I.B.1 is rejected.

This conclusion, however, ultimately aids the City's position because it shows that the term "defense costs," by itself, as used in the context of this insurance contract, is not restricted only to those costs that are paid to a third-party. In Section I.B.1, the "defense costs" described are expressly limited to those paid to a third party, but in many other sections of the insurance contract there is no such limitation or qualification, and that distinction must be given meaning. *See* Or. Rev. Stat. § 42.230. This provides contextual evidence that the term "defense costs," by itself, was not intended to be limited only to those costs paid to a third party. Thus, the term "defense costs" not does exclude the costs of in-house counsel acting as trial counsel of record (and their paralegals), and ICSOP's proposed limited definition of "defense costs" fails at the second interpretive step of the *Holloway* framework.

### b.  Ultimate Net Loss

The parties also disagree about whether "ultimate net loss" includes in-house defense costs. In Section II.HH of the insurance contract, "ultimate net loss" is defined as "the sum actually paid or payable due to a claim or suit to which you are liable either by a settlement to which we agreed or a final judgment, and shall include defense costs. Such sum will include

proper adjustment for recoveries and salvage." Dkt. 21-4 at 8. Because the definition of "ultimate net loss" does not say "defense costs paid to a third party," as that phrase is qualified in Section I.B.1 of the policy, the defense costs referred to in the definition of "ultimate net loss" does not exclude the costs incurred by the City of Portland for its in-house attorneys acting as trial counsel (and their paralegals). Thus, interpreting the contract within the broader policy context required at step two of the *Holloway* framework and applying the analysis of "defense costs" discussed above, "ultimate net loss" includes the defense costs of in-house attorneys acting as trial counsel.

### c. Retained Limit and Salaries

The parties also disagree about whether "retained limit" includes in-house defense costs or whether in-house defense costs are excluded under the insurance contract's reference to employee "salaries." The insurance contract defines "retained limit" in Section II.CC as including defense costs, but excluding "salaries of [the insured's] employees, [the insured's] office expenses, or expense of any claims servicing organization that [the insured has] engaged in." Dkt. 21-4 at 13. This definition standing alone does not make it clear whether the retained limit includes or excludes defense costs of in-house counsel serving as trial counsel of record. Looking at the insurance contract as a whole, however, including "ultimate net loss" and "defense costs" as discussed above, the term "retained limit" does not unambiguously exclude the defense costs of in-house attorneys acting as trial counsel. Moreover, if ICSOP wanted to have any of these definitions exclude the costs of in-house attorneys acting as trial counsel of record, it would have been quite easy to do so explicitly and without ambiguity. The absence of such an unambiguous provision in a contract of insurance, under circumstances when it easily could have been included, also informs the court's interpretation of the policy.

### d.  ICSOP's Contractual Liability

Section I.A.2 of the insurance contract governs ICSOP's liability to the City on the

Chasse Claim. Section I.A.2 states:

> **We** shall pay **you**, or on **your** behalf, the **ultimate net loss**, in
> excess of the **retained limit**, that the **insured** becomes legally
> obligated to pay to compensate others for loss arising out of **your**
> **wrongful act** that takes place during the Policy Period and arises
> solely in performing or failing to perform duties of the **public**
> **entity**.

Dkt. 21-4 at 7. Under the first clause of Section I.A.2, ICSOP is obligated to pay the City

the ultimate net loss in excess of the retained limit. As previously discussed, the ultimate net loss

includes the costs of in-house attorneys acting as trial counsel of record. Thus, it would appear

that ICSOP is obligated to pay the City $1,022,746.34 (the ultimate net loss of $2,022,746.34,

less the retained limit of $1,000,000). Section I.A.2 also includes, however, the clause "that the

insured becomes legally obligated to pay *to compensate others for loss* arising out of your

wrongful act." This phrase seems to indicate that under Section I.A.2, ICSOP's contractual

liability is limited to the amount that the insured becomes legally required to pay to others to

compensate them for loss, which in this case, would be only the $1,600,000 settlement amount

that the City became legally obligated to pay to the Chasse family.

After oral argument on this matter, both parties submitted supplemental briefing on

Section I.A.2. The City argues that the phrase "that the insured becomes legally obligated to pay

to compensate others for loss arising out of your wrongful act" is an insurance phrase of art that

merely indicates that the Section I.A.2 is limited to costs that *arise from* a covered wrongful act.

The City further argues that interpreting Section I.A.2 to limit coverage to only the amount paid

to compensate others for loss arising out of the insured's wrongful act would effectively strip the

term defense costs from any ultimate net loss that ICSOP was ever obligated to pay because

defense costs (whether outside or in-house) would never be to compensate other "for loss." This argument is, at least, plausible.

ICSOP, however, argues that in-house defense costs do not count towards the retained limit, and therefore, the City had only exhausted $233,316 (the outside defense costs) of the total retained limit of 1,000,000. Because of this, ICSOP argues that under Section I.A.2, the City is only owed $833,316 (the $1,600,000 settlement amount, less the remaining retained limit of $766,684). ICSOP's calculation, however, is contrary to the Court's finding above that the term "defense costs" includes the costs of in-house attorneys serving as trial counsel of record (and their paralegals).

If ICSOP's obligations were limited only to reimbursing the City for amounts the City was obligated to pay to others *for loss*, then all defense costs would necessarily be excluded. In that event, the term "ultimate net loss" would be at best superfluous and at worst self-contradictory (when it states that it "shall include defense costs"). When interpreting insurance contracts, however, courts must "assume that the parties to an insurance policy [did] not intend to create meaningless provisions." *Hoffman*, 836 P.2d at 707.

Looking to the text and the context of the entire insurance contract, we are left with ambiguity and must therefore proceed to the third step of the *Holloway* analysis. At this stage, the court resolves any remaining ambiguities against the insurer. Thus, ICSOP is obligated to pay the City the ultimate net loss for the Chasse Claim ($2,856,079) minus the retained limit ($1,000,000), which equals $1,856,079.[3]

---

[3] The parties agree that ICSOP has already paid the city $855,285. Therefore, the City is owed $1,000,794 on claim one.

### 2. Employer Practice Liability Claims

Section I.B.6 of the contract defines ICSOP's contractual liability for the EPL Claims.

Section I.B.6 states:

> If allegations of **wrongful acts** solely [*sic*] as respect to **employment practice liability** are not subsequently proven after a trial by a final judgment or other adjudication adverse to **you** or if there is a dismissal of the **claim** or **suit** before trial, **we** will reimburse you [sic] reimburse **you** up to fifty percent (50%) of reasonable defense costs **you** incur, subject to a maximum amount of 250,000. However, reimbursement of such defense costs will not be made by **us** to **you** if there is any kind of settlement with a third party.

Dkt. 21-4 at 9. ICSOP argues that the word "incur," following "defense costs," limits the defense costs to third party defense costs. This argument, however, is unpersuasive. Black's Law Dictionary defines "to incur" as "to suffer or bring one's self a liability or expense." BLACK'S LAW DICTIONARY 836 (9th ed. 2009). Webster's Law Dictionary, similarly, defines "incur" to mean "to become liable or subject to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1147 (1971). Under the circumstances of this case, if the City engaged in the conduct that was at issue in resolving the lawsuit, they brought on themselves a liability or expense. These definitions of "incur" thus do not tell us that incur applies only to third parties.

Both of these definitions of "incur" are consistent with the City's assertion that the expense of in-house counsel acting as trial counsel should be included as reimbursable under Section I.B.6. Moreover, the insurance contract uses the phrase "to a third party" in other parts of the insurance contract, but not in Section I.B.6, and that distinction must be given meaning. Accordingly, Section I.B.6 requires ICSOP to reimburse fifty percent of the defense costs (up to a maximum of $250,000 per claim) of in-house attorneys acting as trial counsel. ICSOP is thus contractually required to reimburse the City for fifty percent of their defense costs (totaling $257,089.58) in defending the several employment practice liability lawsuits at issue.

**D.  Unjust Enrichment**

The Court has reviewed *de novo* Section IV ("Unjust Enrichment") of Judge Stewart's Findings and Recommendations to which the City has objected. The Court agrees with Judge Stewart's reasoning regarding the fact that the insurance contract must govern any dispute regarding payment between the two parties. Therefore, the Court adopts Judge Stewart's Findings and Recommendations in Section IV.

## CONCLUSION

The Court ADOPTS IN PART AND REJECTS IN PART Magistrate Judge Stewart's Findings and Recommendations (Dkt. 43). The Court adopts the Findings and Recommendations except for Section III relating to whether the term "defense costs" includes the costs of the City's in-house attorneys acting a trial counsel of record (and their paralegals). Defendant's Motion for Summary Judgment (Dkt. 19) is GRANTED IN PART AND DENIED IN PART with summary judgment being granted only against Plaintiff's third claim, alleging unjust enrichment, and denied in all other respects. Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. 25) is GRANTED on Plaintiff's first and second claims, alleging breach of contract.

**IT IS SO ORDERED**.

DATED this 30th day of September, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge